Ronnie R. Gipson Jr., State Bar No. 237673
James Y. Higa, State Bar No. 225683
HIGA & GIPSON, LLP
55 New Montgomery Street, Suite 510
San Francisco, California 94105
Telephone:  (415) 692-6520
Facsimile:  (415) 692-6522
gipson@higagipsonllp.com

Attorneys for Plaintiff JEFFREY V. COMMISSO

FILED
NOV 15 2012
RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

JEFFREY V. COMMISSO,

    Plaintiff,

v.

THOMAS WHITELAW LLP, JOSEPH E. THOMAS, and DOES 1 to 20 inclusive

    Defendants

No. C 12 5867

**COMPLAINT FOR**

1. Breach of Contract- Employment Agreement
2. Violations of Cal. Labor Code §§ 201, 227.3
3. Violations of Cal. Labor Code § 203

**DEMAND FOR JURY TRIAL**

## GENERAL ALLEGATIONS

1.    Plaintiff, Jeffrey V. Commisso, (hereinafter referred to as "Commisso") is a natural person who resides and is domiciled in the State of Minnesota. Before July 2012, Commisso was a resident of California. Commisso is a lawyer licensed to practice in California and Minnesota.

2.    On information and belief, Defendant Thomas Whitelaw is a partnership of lawyers with its principal place of business in California. On information and belief, Thomas

Whitelaw has also been known as Thomas, Whitelaw & Katz LLP; Thomas Whitelaw, LLP; and Thomas Whitelaw & Tyler, LLP. (Notwithstanding the other names, Defendant will be referred to as "the Thomas Whitelaw firm" or "the firm"). The Thomas Whitelaw firm maintains offices in San Francisco, California.

3. On information and belief, although the Thomas Whitelaw firm holds itself out as a limited-liability partnership, at all times relevant to this dispute it has not registered with California Secretary of State or with the State Bar of California in violation of Rules of the State Bar, Rule 3.174; Corporations Code § 16953 et seq.; and Business & Professions Code § 6174. Consequently, pursuant to Cal. Corporations Code § 16306, the Thomas Whitelaw firm's equity partners are subject to individual liability for the wrongs described in this complaint. On information and belief, all of the Thomas Whitelaw firm's current and former partners are domiciled in California.

4. Defendant Joseph E. Thomas ("Thomas") is a natural person. On information and belief, Thomas is a lawyer licensed to practice in California and he is, and at all times mentioned was a resident of, and was domiciled in, California. On information and belief, Thomas is a partner who holds the largest percentage of equity and voting power of the Thomas Whitelaw firm.

5. Plaintiff does not know the true names or capacities of defendants sued as DOES 1 through 20, inclusive. Consequently, Commisso sues these defendants by the fictitious names DOES 1 through 20. When Plaintiff learns the names and capacities of any such defendant, he will amend this complaint to allege those defendants' true name and capacities.

6. On information and belief, Plaintiff alleges that all defendants are, in some manner, partially or equally responsible for the acts and omissions that caused his injuries and damages as alleged in this complaint.

7. On information and belief, at all times each defendant was the *alter ego*, joint venture, agent, servant, employee, partner, or surety of the other defendants and was acting within the scope of such venture, agency, employment, partnership, or suretyship, with the knowledge, consent, or ratification of each of the other defendants in doing the things alleged in

this complaint. On information and belief, and in the alternative, where any defendant was acting outside the scope of such venture, agency, employment, partnership, or suretyship, or without the knowledge, consent, or ratification of the other defendants in doing the things alleged he is personally liable for doing the things alleged in this complaint. This complaint refers to all defendants named herein collectively as "Defendants" or "the Firm".

## JURISDICTION AND VENUE

8. This Court has original jurisdiction under 28 U.S.C. § 1332, in that it is a civil action between citizens of different states and the amount in controversy exceeds $75,000, exclusive of interest and costs.

9. Venue is proper in this judicial district under 28 USC § 1391(b) because a substantial part of the events or omissions giving rise to the claims alleged occurred in the County of San Francisco. Venue is proper in this division under Local Rule 3-2(c) for the same reason.

## FACTS GIVING RISE TO COMPLAINT

### Commisso's Agreement with the Thomas Whitelaw firm.

10. Brian D. Henri ("Henri") is a natural person. On information and belief, Henri is (or was) a partner of the Thomas Whitelaw firm but holds (or held) no equity. Nevertheless at all times relevant to this complaint, Henri was the managing partner of the firm's San Francisco office.

11. On September 30, 2010, Commisso spoke with Thomas and Henri by telephone. During this call, Thomas, acting in his capacity as a partner of the Firm, offered to employ Commisso with the title of "non-equity partner" starting October 11, 2011. As part of the offer, Thomas promised to employ Commisso at an annual base salary as consideration for Commisso's services. Separate and distinct from the term of consideration, Thomas promised that Commisso would have an annual target of approximately 1,800 recorded hours. Thomas promised that the Firm would pay consideration to Commisso for his employment in the following form: (i) a monthly draw; and (ii) a year-end distribution. And Thomas promised that the Firm paid distributions every "six or nine months;" that the 1,800 hour target was not rigid;

3

COMPLAINT

1  and that there would be additional compensation for hours recorded in excess of the 1,800-hours
2  target. Thomas also represented to Commisso that the Firm was growing; the Firm management
3  was "transparent;" Commisso would "be treated like every other partner;" and that, in time,
4  Commisso could become an equity partner. Commisso did not immediately accept the
5  employment offer, but asked to consider it and get back to Thomas and Henri.

6       12.    On or about October 1, 2010, Commisso telephoned Henri to discuss the Firm's
7  employment offer. Commisso asked Henri how the Firm would calculate and pay the
8  distribution. Henri confirmed that the distribution would be paid, *pro rata,* based on hours
9  recorded. Henri also explained that the hours-recorded-per-year target would be based on
10 Commisso's employment anniversary with the Firm. Commisso also asked Henri how the Firm
11 would compensate Commisso for new business that Commisso brought in to the Firm. Henri
12 assured Commisso that "Thomas will be fair" and pay a reasonable amount for such business.
13 Based on Thomas's and Henri's promises and representations, Commisso accepted the Firm's
14 oral employment offer.

15       13.    On October 4, 2010, Henri telephoned Commisso and asked Commisso to start
16 work on October 6 instead of October 11. As a result, Commisso started working for the Firm
17 on October 6, 2010, in its San Francisco, California, office.

18       14.    On information and belief, the Firm has a written partnership agreement. But
19 Commisso has never signed, been asked to sign, or even seen any such an agreement.

20                          **October 2010 to October 2011**

21       15.    In November or December 2010, Commisso spoke with Henri by telephone.
22 During this conversation, Henri told Commisso that everyone was pleased with Commisso's
23 work. Henri also said that he and Thomas were impressed by Commisso's initial business-
24 development efforts, which Henri said were "unnecessary."

25       16.    Two or three times between October 2010 and October 2011, Henri told
26 Commisso that the firm was doing "great," that he'd asked "the partners" about Commisso's
27 work and that "the partners" felt that Commisso was doing a "great job."

28       17.    Although Thomas promised as part of the oral employment agreement that

4

COMPLAINT

Commisso would be a "partner," Commisso was a mere employee. Commisso's compensation was not tied to profit or loss. Commisso was never given any financial information about the firm; he was never asked or allowed to vote on any issue; his input was never solicited on any issue; and he was never given an ownership interest in the Firm. Moreover, Commisso had to obtain authorization to purchase supplies, such as books or on-line resources.

18. On information and belief the Thomas Whitelaw firm has a pattern and practice of mischaracterizing at-will employees as "non-equity partners" to avoid expenses, e.g., state and federal taxes, SSI withholding, workers-compensation insurance and other benefits. Between October 2010 and February 2012, a half dozen of the Firm's attorneys were either fired or left the Firm's employ on their own.

### Thomas Whitelaw Refuses to Pay Commisso

19. On October 6, 2011, Commisso completed his first year of work for the Firm. At this point the Firm should have paid him his distribution for the 2010–2011 year per the terms of the oral employment agreement. However, the Firm did not pay Commisso his distribution.

20. On October 24, 2011, Commisso sent Thomas an e-mail about (i) Commisso's 2010–2011 distribution; and (ii) Commisso's compensation/billable-rate for 2011–2012. With respect to the distribution, Commisso asked for his *pro rata* payment based on the billable hours he recorded. Thomas did not respond to this e-mail. On November 7 and 16, 2011, Commisso sent Thomas follow-up e-mails about these subjects. Again, Thomas did not respond.

21. On November 28, 2011, Commisso met with Thomas in Thomas's office. During this conversation, Thomas explained that the Firm would likely not increase Commisso's compensation for 2011–2012; that Commisso's employment at the firm was no different from "a fourth-year associate;" and that Commisso was as fungible to the Firm as Thomas's gardener was to him. Still, Thomas agreed that the Firm owed Commisso a distribution. Prior to authorizing payment of the distribution, Thomas indicated that he needed to "check the numbers" before he could authorize payment. Thomas promised to get back to Commisso the next week.

22. On November 30 and December 9, 2011, Commisso sent Thomas further e-mails

COMPLAINT

following up on the November 28, 2011, meeting. Thomas did not respond to these e-mails until December 12, 2011, when Thomas scheduled a telephone call for the next day. However, Thomas did not call the next day.

23. On December 14, 2011, Thomas and Commisso spoke by telephone. Commisso asked Thomas whether he agreed that the Firm should pay Commisso's distribution. Thomas said "yes, pro rata," but again said that he wanted to look at the numbers. Thomas promised to get back to Commisso the next week. Within minutes of termination of the call with Thomas, Commisso sent Thomas copies of e-mails from the Firm's internal accounting staff that identified Commisso's recorded billable hours for the 2010-2011 year as well as Commisso's client revenue for the same term. The hours billed by Commisso entitled him to a *pro rata* distribution payment equivalent to 80% of the goal under the terms of the oral employment agreement between Commisso and the Firm.

24. On January 3, 2012, Commisso sent Thomas another e-mail following up on their November 28, 2011, meeting and December 14, 2011, telephone call. Thomas responded on January 5, 2012, and promised to get back to Commisso the next week; however, Thomas did not do so.

25. The week of January 16, 2012, Henri contacted Commisso. Henri said that "everyone" was "happy with Commisso's work," that there were no issues, and that "everyone" agreed that they would like to send more work to Commisso.

26. On or about February 9, 2012, Commisso left Thomas a voicemail again inquiring about the status of Commisso's distribution. Thomas responded by e-mail and promised to call Commisso on February 20, 2012. Thomas did not call.

27. On February 23, 2012, Commisso sent Thomas another follow-up e-mail concerning the 2010–2011 distribution payment and compensation rate for 2011–2012.

### Commisso's Employment Ends

28. On February 27, 2012, Thomas and Commisso spoke by telephone. Contrary to the terms of the agreement between Commisso and the Thomas Whitelaw firm, Thomas said that the Firm would not pay Commisso any part of his 2010-2011 distribution. Commisso told

Thomas that this was a material change in the parties' agreement; that non-payment of the distribution was not what the parties had agreed to, and that non-payment of the distribution was neither fair nor reasonable. At this point, Thomas said that Commisso could accept this or that Commisso could "…go right now, we will take you off the website today, and you can file a claim." Shocked, Commisso said that he would get back to Thomas the following day. Thomas agreed.

29. On February 28, 2012, Commisso called Thomas to finish the prior day's conversation. But Thomas did not respond to this call. Instead, Henri returned Commisso's call. Henri said he wanted to "look at the numbers" and would get back to Commisso later that day. When Commisso and Henri spoke that afternoon, Henri, acting in his capacity as an agent of the Firm, said that the Firm would pay Commisso less than one-third of the distribution that it owed to him per the terms of the agreement. Commisso did not accept the Thomas Whitelaw firm's revised offer. When Commisso said "no," Henri responded "then pack your shit and get out now." Commisso hung up the phone, packed what things he could, and left the Thomas Whitelaw firm premises.

30. On March 9, 2012, Commisso wrote to the Firm requesting that the Firm (i) turn over his remaining personal electronically-stored information maintained on the Thomas Whitelaw firm's computer system; and (ii) to pay him his wages due. The Firm refused. Among the electronically-stored information wrongfully withheld by the Firm are writings that document the parties' agreement.

## FIRST CAUSE OF ACTION

### Breach of Contract

31. Commisso incorporates and realleges Paragraphs 1-30.

32. A valid and enforceable oral contract existed between Commisso and the Thomas Whitelaw firm for at-will employment.

33. Commisso has at all times performed the terms of the contract in the manner specified by the contract.

34. Defendants failed and refused, and continue to refuse, to tender performance as

required by the contract in that, on or about February 28, 2012, they refused to pay Commisso the money that they owed him.

35. Defendant's failure and refusal to perform its obligations under the contract has damaged Commisso; Commisso has suffered and continues to suffer damages in amount to be proved at trial but in excess of $75,000.

## SECOND CAUSE OF ACTION

### Labor Code Violations

36. Commisso incorporates by reference and realleges Paragraphs 1-35 above.

37. On February 28, 2012, at the time that Defendants terminated Commisso's employment, Commisso had last been paid on February 1, 2012 and was owed wages for his work from 2010 to 2011 and for his performance from February 1, 2012 to February 28, 2012, in a total amount in excess of $75,000 as provided for in the employment agreement.

38. At the time of termination, Defendants failed to pay Commisso any of the amounts due as set forth above. Defendants failure to pay the full amount due Commisso on termination violates the provisions of the California Labor Code sections 201 and 227.3. There is now due and owing to Commisso the sum of at least $75,000. Defendants failed and refused, and continue to fail and refuse to pay the amount due.

39. Pursuant to California Labor Code section 218.5, Commisso requests that the Court award Commisso reasonable attorney's fees and costs incurred by him in this action.

40. Pursuant to Labor Code section 218.6, Commisso requests that the Court award Commisso interest on all due and unpaid wages, at the legal rate specified in California Civil Code section 3289(b), accruing from the date the wages were due and payable.

## THIRD CAUSE OF ACTION

### Violation Labor Code Section 203

41. Commisso incorporates by reference and realleges Paragraphs 1-40 above.

42. The Defendants' failure to pay wages, as alleged above, was willful in that Defendants knew they owed the wages to Commisso; Commisso made clear and straightforward demands for payment of wages highlighting the legal consequences for Defendants' continued

8

COMPLAINT

willful failure to do so, thus entitling Commisso to penalties under Labor Code section 203, which provides that an employee's wages shall continue as a penalty until paid or for a period of up to 30 days from the time they were due whichever period is shorter.

43. Defendants failed to pay Commisso the sum due him at the time of termination and have failed to pay those sums for more than 30 days thereafter. Pursuant to the provisions of California Labor Code section 203, Commisso is entitled to a penalty in the amount of $10,000, which amount is the product of his daily rate multiplied by 30 days.

## JURY DEMAND

Plaintiff, Jeffrey V. Commisso, demands a trial by jury in this matter.

## PRAYER

WHEREFOR, Commisso prays for judgment against Defendants and each of them as follows:

1. For damages for breach of contract according to proof;
2. For interest on that amount from February 28, 2012;
3. For penalties pursuant to California Labor Code;
4. For reasonable attorney's fees incurred by Commisso;
5. For costs of suit incurred by Commisso; and
6. For such other and further relief as the Court deems proper.

November 15, 2012                    HIGA & GIPSON, LLP


By _____
RONNIE R. GIPSON JR.
Attorneys for Jeffrey V. Commisso

COMPLAINT